**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division**

SONYA MCINTYRE-HANDY,

                **Plaintiff,**

v.                                               **ACTION NO. 4:05cv124**

APAC CUSTOMER SERVICES, INC.,

                **Defendant.**

## OPINION AND ORDER

    This matter is before the court on plaintiff Sonya McInytre-Handy's ("McIntyre-Handy") Motion to Take Leave to Amend Original Complaint ("Motion to Amend") and Motion to Add United Parcel Service as Liable Party ("Motion to Add UPS") and defendant APAC Customer Services, Inc.'s ("APAC") Partial Motion to Dismiss, or, in the Alternative, for Summary Judgment.  For the reasons stated below, McInytre-Handy's Motion to Amend is **GRANTED** as to APAC, her Motion to Add UPS is **DENIED,** and APAC's Partial Motion to Dismiss, or, in the Alternative, for Partial Summary Judgment is **GRANTED.**

## I. Factual and Procedural History

    APAC provides outsourced customer-management and acquisition services using the telephone and internet.  McIntyre-Handy was employed by APAC as a call center agent responsible for handling customer service calls for APAC's clients, including United Parcel Service ("UPS").  Def.'s Opp'n Pl.'s Mot. Amend Compl. & Pl.'s Mot. Add Def. ("Def.'s Opp'n Pl.'s Motions") at 1.  On June 28, 2004,

McIntyre-Handy filed suit in this court against APAC alleging failure to accommodate her alleged disability, disparate treatment, and retaliation, in violation of the Americans with Disabilities Act of 1990 ("ADA"). <u>McIntyre-Handy v. APAC Customer Servs., Inc.</u>, No. 4:04cv83 (E.D. Va. May 13, 2005);[1] <u>see</u> Mem. P. & A. Supp. Def.'s Partial Mot. Dismiss, or, in the Alternative, Partial Summ. J. ("Mem. Supp. Def.'s Mot.") at 3.

The instant suit is based on APAC's alleged retaliation against McInytre-Handy for filing the June 28, 2004, suit. McIntyre-Handy alleges that APAC committed the following

---

[1]On May 13, 2005, this court granted APAC's motion for summary judgment on the failure to accommodate, disparate treatment, and retaliation claims McIntyre-Handy raised in the suit filed on June 28, 2004. <u>See</u> <u>McIntyre-Handy v. APAC Customer Servs., Inc.</u>, No. 4:04cv83 (E.D. Va. May 13, 2005). On February 28, 2006, the Fourth Circuit, in an unpublished, per curiam opinion, summarily affirmed this court's ruling in that case. <u>See</u> <u>McIntyre-Handy v. APAC Customer Servs., Inc.</u>, No. 05-1682, 2006 WL 475790 (4th Cir. Feb. 28, 2006).

Prior to filing the employment discrimination suits against APAC, McIntyre-Handy filed two other employment discrimination suits in this court against two other defendants. <u>See</u> <u>McIntyre-Handy v. West Telemarketing Corp.</u>, 97 F. Supp. 2d 718 (E.D. Va. 2000); <u>McIntyre-Handy v. Commonwealth of Virginia</u>, No. 4:96cv48 (E.D. Va. Mar. 21, 1997) (concluding with a favorable judgment for plaintiff). In the 2000 suit filed against West Telemarketing Corp., McIntyre-Handy, who was employed by West Telemarketing Corp. as a telemarketing representative, alleged disparate treatment on the basis of religion and failure to accommodate her religion, in violation of Title VII of the Civil Rights Act of 1964. <u>See</u> <u>West Telemarketing Corp.</u>, 97 F. Supp. at 724. On May 19, 2000, this court granted West Telemarketing Corp.'s motion for summary judgment on McIntyre-Handy's disparate treatment and failure to accommodate claims, <u>see</u> <u>id.</u> at 729-37, which ruling the Fourth Circuit summarily affirmed in an unpublished, per curiam opinion, <u>see</u> <u>McIntyre-Handy v. West Telemarketing Corp.</u>, 238 F.3d 413, 2000 WL 1853339 (4th Cir. Dec. 19, 2000).

retaliatory acts from June 30, 2004, to September 30, 2004:[2]
During July, 2004, McInytre-Handy was "monitored more excessively
in harassment" by APAC management, and the excessive monitoring
continued into August, 2004.  Compl. at 2-3, ¶ 5; Derkowski Aff. ¶
3.  On July 30, 2004, McIntyre-Handy's supervisor Aaron Lacomte
("Lacomte") harassed her and told her that she should quit, and she
left early after this harassment.  Compl. at 3, ¶ 8; Pleadings
("Pl.'s Sworn Statement") at 4, ¶ 8.[3]  She was verbally disciplined
on August 9, 2004, for both eating at and sitting on her desk,
which infractions she claims were never committed.  Compl. at 2-3,
¶ 5; Pl.'s Sworn Statement at 4, ¶ 8.  The Corrective Action Form
documenting the August 9, 2004, disciplinary action indicates that
McIntyre-Handy was also disciplined for leaving early on July 30,
2004, which infraction she claims was caused by Lacomte telling her

---

[2] APAC does not, for the purposes of its Partial Motion to
Dismiss, or, in the Alternative, for Partial Summary Judgment,
dispute the truth of McIntyre-Handy's factual allegations in her
Complaint.  Mem. Supp. Def.'s Mot. at 2.

[3] McIntyre-Handy's sworn statement presented in response to
APAC's Partial Motion to Dismiss, or, in the Alternative, for
Partial Summary Judgment contained the additional allegations that
on August 3, 2004, McIntyre-Handy was harassed, told to quit, and
detained for forty-five minutes in Lacomte's office, causing her to
be tardy for her scheduled shift; and on August 4, 2004, McIntyre-
Handy was told not to report to work "because UPS corporate
visitors would be in the building and because of [her] lawsuit they
did not want [her] there."  See Pl.'s Sworn Statement at 4, ¶ 8.
These allegations are not part of McIntyre-Handy's complaint or
amended complaint.  To the extent that these allegations are
responsive to APAC's motion, they have been considered by the
court.

to quit on that day.   <u>See</u> Reply Def.'s Partial Mot. Dismiss or
Partial Summ. J. ("Pl.'s Resp. Def.'s Mot.") Ex. 2 (August 9, 2004,
Corrective Action Form);  Pl.'s Sworn Statement at 4, ¶ 8.[4]
According to McIntyre-Handy, other employees were not held to the
same attendance and other standards.  Compl. at 3, ¶¶ 5, 7.

On September 21, 2004, McIntyre-Handy was disciplined in
writing for failing three out of five Corporate Call Monitorings
("call tests"), for accruing fourteen and a half days of un-excused
absences, and for being disrespectful for stating she "was sick of
APAC discriminating against her."  Compl. at 2, ¶ 3; Pl.'s Sworn
Statement at 5, ¶ 9; Def.'s Reply Pl.'s Opp'n Def.'s Partial Mot.
Dismiss, or, in the Alternative, Partial Summ. J. ("Def.'s Reply
Pl.'s Resp.") Ex. 1 (September 21, 2004, Corrective Action Form).
According to McIntyre-Handy, she failed the call tests because she
was intentionally distracted by Lacomte and another supervisor,
Wayland Brinkley ("Brinkley"), who stood and talked over her while
the call tests were being conducted; and she accrued the absences
because she was preparing the lawsuit filed on June 28, 2004, for
which she was not granted leave time to prepare.  Pl.'s Sworn
Statement at 4-5, ¶ 9.  On September 22, 2004, Human Resources
Manager Don Weldon ("Weldon") threatened to terminate McIntyre-

---

[4] McIntyre-Handy was also disciplined on August 9, 2004, for
two additional attendance infractions:  tardiness on August 3,
2004, and absence on August 4, 2004.  <u>See</u> Pl.'s Resp. Def.'s Mot.
Ex. 2 (August 9, 2004, Corrective Action Form).

Handy after she "requested to have [her] disciplinary actions removed" and "cited in writing" that the disciplinary actions were harassment in retaliation for her filing the June 28, 2004, suit. Compl. at 3-4, ¶ 9.  A few days later, on September 24, 2004, Weldon denied her request for leave to prepare the June 28, 2004, suit, saying that he didn't care about court orders and he "knocked a medical device off [McIntyre-Handy's] hip that he said was a taping device."  Id. at 3, ¶ 9.  Then, on September 30, 2004, McIntyre-Handy was terminated after she "objected to harassment and requested to have [her] disciplinary conversation taped."  Id. at 4, ¶ 10.

On August 24, 2004, prior to her termination, McIntyre-Handy filed an administrative charge with the Equal Employment Opportunity Commission ("EEOC"), alleging that APAC harassed her and disciplined her on August 9, 2004, in retaliation against her for filing a disability discrimination suit against APAC on June 28, 2004.  Id. Ex. 4 (August 24, 2004, EEOC Charge).  After her termination, McIntyre-Handy amended her charge on November 5, 2004, to allege that the September 21, 2004, disciplinary action and September 30, 2004, termination were additional retaliatory acts by APAC in response to her filing suit on June 28, 2004.  Id. Ex. 3 (November 5, 2004, EEOC Charge).  On April 28, 2004, the EEOC mailed McIntyre-Handy a right-to-sue letter.  Id. Ex. 1 (McIntyre-Handy's right-to-sue letter).

5

On September 15, 2005,[5] McIntyre-Handy, proceeding <u>pro</u> <u>se</u>, filed a complaint in this court against APAC alleging that APAC retaliated against her, in violation of the ADA, that APAC did not hold other employees to the same standards to which it held her, and that APAC abridged her freedom of speech and right to petition the government for a redress of grievances, in violation of the First Amendment.  On November 14, 2005, APAC filed a Partial Motion to Dismiss, or, in the Alternative, for Partial Summary Judgment, and a memorandum and exhibits in support thereof.  In accordance with <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), and Eastern District of Virginia Local Civil Rule 7(K), McIntyre-Handy was given an opportunity to file a legal brief in opposition to APAC's memorandum and to set forth her version of the facts by offering affidavits and sworn statements.  On December 2, 2005, McIntyre-Handy responded to APAC's memorandum with a legal brief, an affidavit, and a sworn statement.[6]  APAC filed a reply to

_____

[5] On July 28, 2005, McIntyre-Handy filed a Motion to Proceed in Forma Pauperis, with proposed complaint attached.  Her motion was granted and her proposed complaint was filed on September 15, 2005.

[6] Since McIntyre-Handy responded to APAC's motion with an affidavit and sworn statement, she clearly intended to respond to APAC's motion for summary judgment, and, since the affidavit and relevant portions of her sworn statement are admissible under Rule 56(e) of the Federal Rules of Civil Procedure, APAC's motion will be treated as one for summary judgment.  <u>See</u> Fed. R. Civ. P. 12(c) (2005) (providing that "[i]f, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . .");

McIntyre-Handy's response on December 12, 2005.  Then, on January 12, 2006, McIntyre-Handy filed a Motion to Amend and a Motion to Add UPS.  APAC responded in opposition to McIntyre-Handy's motions on January 26, 2006.  McIntyre-Handy's and APAC's motions are now ripe for review.

## II. Motions to Amend and to Add UPS as a Party[7]

In her Motion to Amend, filed pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, McIntyre-Handy requests leave to amend her complaint to add a statement of the grounds for the court's jurisdiction, a list of the effects of APAC's alleged harassment and retaliation, and a demand for $300,000 in damages for intentional infliction of emotional distress.  Mot. Amend.  She also seeks leave to amend to allege that Lacomte, along with Brinkley, distracted and harassed her during the weeks of August 8-21, 2004,[8] and while Lacomte and Brinkley were distracting and

---

id. 56(e) (2005) (requiring supporting and opposing affidavits to be made on personal knowledge and to set forth facts that would be admissible in evidence).

[7] Although McIntyre-Handy's Motion to Amend and Motion to Add UPS were filed after APAC filed its Motion to Dismiss, or, in the Alternative, for Partial Summary Judgment, McIntyre-Handy's motions are addressed first because if her motions are granted, the court will consider APAC's motion as addressed to the amended pleading.  See Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc., 299 F. Supp. 2d 565, 570 (E.D. Va. 2004) (Smith, J.).

[8] McIntyre-Handy appears to seek to add only a factual allegation involving Lacomte, and not a claim against Lacomte as an additional liable party.  To the extent that McIntyre-Handy does seek to amend to allege a claim against Lacomte, such an amendment is addressed infra note 13.

harassing her, UPS, a client of APAC, conspired to violate her Fourth Amendment rights by illegally taping her conversations with her customers.  Id. at 2.[9]  She raises the same Fourth Amendment claim against UPS in her Motion to Add UPS, filed pursuant to Rule 21 of the Federal Rules of Civil Procedure.  Mot. Add UPS.  APAC opposes both motions, asserting that the applicable rules require leave of court to both amend her complaint and add UPS as a party, and arguing that leave should be denied as to both motions because both the proposed amendments and the addition of UPS as a party would be futile.  Def.'s Opp'n Pl.'s Motions.

Amendments to pleadings, in general, are governed by Rule 15.  See Fed. R. Civ. P. 15 (2005).  Rule 15(a) provides that "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . . [o]therwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party . . . ."  Id.  The time for

---

[9] Specifically, McIntyre-Handy alleges that UPS "conspired to make me feel less than secure in my person, violating my Constitutional Rights under Article IV."  Mot. Amend at 2.  By referencing "Article IV" and the right to be secure in her person, McIntyre-Handy must be alleging violation of the Fourth Amendment right against unreasonable searches and seizures.  See U.S. Const. amend. IV (providing that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . .").  A Fourth Amendment claim is the only claim McIntyre-Handy seeks to allege against UPS, which she describes as a client of APAC.  Mot. Add UPS at 2.  She does not allege, nor do the facts suggest, that UPS was her "employer" within the meaning of the ADA.  See 42 U.S.C. § 12111(5) (2005) (defining employer).

amending once as a matter of course expires when a responsive
pleading is served.  See id.  If a party nevertheless moves for
leave to amend before the time for amending once as a matter of
course has expired, the amendment should be granted as of right.
See St. John v. Moore, 135 F.3d 770 (4th Cir. 1998) (unpublished)
(holding that since no responsive pleading has been served,
"entitlement to amend was not a matter of the court's discretion");
see also Stewart v. RCA Corp., 790 F.2d 624, 631 (7th Cir. 1986)
(holding that party did not lose his right to amend once as a
matter of course by asking leave to amend; the court was obliged to
grant the unnecessary request); Zaidi v. Ehrlich, 732 F.2d 1218,
1220 (5th Cir. 1984) (same); Rogers v. Girard Trust Co., 159 F.2d
239, 241 (6th Cir. 1947) (same).[10]  At the same time, however, Rule

---

[10] The party who moves to amend before the time for amending
once as a matter of course has expired presumably does so
inadvertently, so granting amendment as of right does not penalize
the party who misunderstands the rule.  See 6 Charles Alan Wright,
Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. § 1482 (2d ed.
1990).  McIntyre-Handy correctly argues that Rule 15(a) entitles
her to amend once as a matter of course, yet, at the same time, she
mistakenly believes that leave of court is necessary to so amend.
Mot. Amend at 1.  APAC, on the other hand, argues that leave of
court is required, but the Supreme Court and Fourth Circuit
opinions APAC cites in support of its proposition are inapplicable
because they involve situations where a judgment had already been
rendered, a responsive pleading had been served, or the party had
already amended once as a matter of course.  See Def.'s Opp'n Pl.'s
Motions at 2-3 (citing Foman v. Davis, 371 U.S. 178 (1962) (party
moved to vacate judgment and amend complaint), Deasy v. Hill, 833
F. 2d 38 (4th Cir. 1987) (party moved to amend immediately before
trial after motion for summary judgment had been denied), Burns v.
AAF-McQuay, Inc., 166 F.3d 292 (4th Cir. 1999) (party moved to
amend after summary judgment had been rendered and the judgment had
been reversed, in part, and remanded), and Ward Elecs. Serv. Inc.

21 provides that order of the court upon motion of a party is required to drop or add a party.  See Fed. R. Civ. P. 21 (2005).[11]  Whether to grant a motion to add a party lies in the sound discretion of the district court.  See Gilbert v. Gen. Elec. Co., 347 F. Supp. 1058, 1059 (E.D. Va. 1972).  The court may exercise its discretion to deny a motion to add a party when the addition would be futile, such as when there is no basis to hold the party to be added liable.  Cf. Tao of Sys. Integration, Inc., 299 F. Supp. 2d at 571 (granting motion to amend the complaint to add parties where claims asserted against parties to be added are not clearly frivolous or patently defective).

Since neither a motion to dismiss nor a motion for summary judgment is a responsive pleading, see Domino Sugar Corp. v. Sugar Workers Local 392, 10 F.3d 1064, 1068 n.1 (4th Cir. 1993) (noting that "[a] motion to dismiss is not a responsive pleading for the purposes of Rule 15(a)"); Clardy v. Duke Univ., 299 F.2d 368, 369 (4th Cir. 1962) (indicating that a motion for summary judgment is not a responsive pleading); 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. § 1483 (2d ed. 1990)

---

v. First Commercial Bank, 819 F.2d 496 (4th Cir. 1987) (party had already amended once as a matter of course).

    [11] The specific provisions of Rule 21 control the general provisions of Rule 15, such that even if the time for amending once as a matter of course has not expired, an amendment dropping or adding parties requires leave of court.  See United States v. Thomas Howell Kiewit (USA) Inc., 149 F.R.D. 125, 126 (E.D. Va. 1993) (Smith, J.).

(explaining that "responsive pleading" as used in Rule 15(a) must be defined in accordance with the descriptions of pleadings in Rule 7(a), and, under Rule 7(a), a motion is a not a responsive pleading), McIntyre-Handy's time for amending once as a matter of course has not expired, so her Motion to Amend as to defendant APAC is **GRANTED**.  See St. John, 135 F.3d at 770.[12]

McIntyre-Handy properly seeks order of court pursuant to Rule 21 to add UPS as a party liable for violating her Fourth Amendment rights by taping her conversations with her customers.  She has not, however, alleged facts by which the court could find that the Fourth Amendment protects her against taping by UPS.  The Fourth Amendment protects against unreasonable searches and seizures by government officials or by private persons acting as agents of the government or with the participation or knowledge of a government official.  United States v. Jacobsen, 466 U.S. 109, 113 (1984). The Fourth Amendment "does not provide protection against searches by private individuals acting in a private capacity."  United States v. Jarrett, 338 F.3d 339, 344 (4th Cir. 2003).  Both UPS and APAC are private corporations, and McIntyre-Handy does not allege

---

[12] The complaint against APAC is thus amended to include the jurisdictional statement, the list of effects of APAC's alleged harassment and retaliation, the allegation that Lacomte also distracted McIntyre-Handy from her work during the weeks of August 8-21, 2004, and the demand for $300,000 in damages for intentional infliction of emotional distress.  See supra at 7-8 (stating McIntyre-Handy's proposed amendments to her complaint); infra at 30-32 (addressing McIntyre-Handy's amendment to add a demand for damages for intentional infliction of emotional distress).

otherwise.  <u>See</u> Def.'s Opp'n Pl.'s Motions at 5-6 (asserting that UPS is a private corporation); Mem. Supp. Def.'s Mot. Ex. 4 (APAC's Financial Disclosure Statement); Pl.'s Sworn Statement at 3 (disputing APAC's contention that as a corporation APAC is not liable under the Constitution for violating her constitutional rights).  Any tape recording of McInytre-Handy's business conversations was conducted pursuant to APAC policy, by which APAC monitored its employee's business conversations, live or by tape recording, for the purpose of providing its employees feedback and training.  <u>See</u> Def.'s Opp'n Pl.'s Motions at 5 & Ex. 4 (Employee Statement of Understanding).  McIntyre-Handy does not allege, nor does the evidence show, that APAC taped its employees' business conversations to assist law enforcement or that the government even knew that APAC taped its employees' business conversations.  <u>See</u> <u>Jarrett</u>, 338 F.3d at 344 (holding that to determine whether a search conducted by a private person constitutes a government search triggering Fourth Amendment protections, the court should consider whether the private person intended to assist law enforcement and whether the government knew of and acquiesced in the private search).  Since the Fourth Amendment does not protect McIntyre-Handy against taping by UPS or APAC, her Fourth Amendment claim against UPS is patently defective.  <u>Cf.</u> <u>Tao of Sys. Integration, Inc.</u>, 299 F. Supp. 2d at 571.  She has alleged no other basis to hold UPS liable; therefore, the addition of UPS as

a party would be futile, and McIntyre-Handy's Motion to Add UPS as a Party is **DENIED**.[13]

### III. Partial Motion to Dismiss, or, in the Alternative, for Partial Summary Judgment

#### A.   Standard of Review[14]

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) (2005); See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The moving party bears the initial burden of showing there is an

---

[13] To the extent that McIntyre-Handy moves to amend her complaint to add Lacomte as a party, see supra note 8, leave of court is also **DENIED**. McIntyre-Handy has not specifically moved for leave of court to add Lacomte as a party. See Age of Majority Educ. Corp. v. Preller, 512 F.2d 1241, 1245-46 (4th Cir. 1973) (holding that the district court was correct to decline to receive an amended complaint dropping and adding parties where the plaintiff did not seek leave of court to drop or add the parties). Moreover, the addition of Lacomte as a party would be futile, because he cannot be liable under the ADA. See Baird ex rel. Baird v. Rose, 192 F.3d 462, 472 (4th Cir. 1999) (holding that "the ADA does not permit an action against individual defendants for retaliation for conduct protected by the ADA"); Allen v. Coll. of William & Mary, 245 F. Supp. 2d 777, 786-87 (E.D. Va. 2003) (holding that supervisory employee is not an "employer" within the meaning of the ADA and cannot be liable for violations of the ADA). Additionally, McIntyre-Handy has alleged no facts by which the court could find that the Fourth Amendment protects her against unreasonable searches and seizures by Lacomte. See supra at 11-13.

[14] APAC's motion will be treated as one for summary judgment because, after receiving Roseboro notice, McIntyre-Handy presented an affidavit and sworn statement, which will be considered by the court in determining APAC's motion. See supra note 6.

absence of evidence to support the nonmoving party's case. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-25 (1986). When the moving party's initial burden is met, the adverse (nonmoving) party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." <u>See</u> Fed. R. Civ. P. 56(e) (2005). The existence of a mere scintilla of evidence in support of the nonmoving party's case will be insufficient to defeat summary judgment; there must be evidence on which a jury could reasonably find for the nonmoving party. <u>Anderson</u>, 477 U.S. at 252; <u>see also</u> <u>Felty v. Graves-Humphreys Co.</u>, 818 F.2d 1126, 1128 (4th Cir. 1987) (stating that "[u]nsupported speculation is not sufficient to defeat a summary judgment motion"). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," then the moving party is entitled to judgment as a matter of law. <u>Celotex</u>, 477 U.S. at 322-23.

## B. **Analysis**

## 1. **Retaliation**

APAC requests summary judgment on McIntyre-Handy's retaliation claims based on the following specific allegations: (1) Lacomte told McIntyre-Handy on July 30, 2004, that she should quit; (2) APAC management accused McIntyre-Handy of sitting on her desk; (3)

APAC management excessively monitored McIntyre-Handy during July and August, 2004; (4) APAC management accused McIntyre-Handy of eating at her desk; and (5) Lacomte and Brinkley stood over McIntyre-Handy talking and distracting her from her work during the weeks of August 8-21, 2004.  See Mem. Supp. Def.'s Mot. at 7, 9-10.[15]  APAC argues that McIntyre-Handy cannot maintain retaliation claims based on these specific allegations because these allegations were not specifically mentioned in her amended EEOC charge and these allegations do not amount to adverse employment actions as a matter of law.  Id. at 7-10.  McIntyre-Handy responds that these allegations fall within the scope of the disciplinary actions that were specifically mentioned in her amended EEOC charge and these allegations did adversely affect her because they led to the disciplinary actions, which disciplinary actions led to her termination.  Pl.'s Resp. Def.'s Mot. at 2-3, ¶¶ 2-3.

**a.   Exhaustion of Administrative Remedies**

Before filing an employment discrimination suit under the ADA, an employee must exhaust her administrative remedies by filing a charge with the EEOC.  Davis v. Virginia Commonwealth Univ., 180 F.3d 626, 628 n.3 (4th Cir. 1999).[16]  The employee's EEOC charge

---

[15]  The court considers APAC's motion as addressed to the amended complaint, which alleges that Lacomte, along with Brinkley, distracted McIntyre-Handy from her work during the weeks of August 8-21, 2004.  See supra note 7.

[16]  Since the EEOC exercises the same enforcement powers, remedies, and procedures in employment discrimination claims under

frames the scope of the employment discrimination suit that may follow. <u>Bryant v. Bell Atl. Maryland, Inc.</u>, 288 F.3d 124, 132 (4th Cir. 2002); <u>Evans v. Techs. Applications & Serv. Co.</u>, 80 F.3d 954, 962-63 (4th Cir. 1996). The Fourth Circuit explained in <u>Chacko v. Patuxent Institution</u>, 429 F.3d 505 (4th Cir. 2005), that a claim may be maintained in an employee's employment discrimination suit only if there is a sufficient connection between the claim and the employee's EEOC charge. 429 F.3d at 509. The connection will be sufficient if the "factual allegations in the administrative charge are reasonably related to the factual allegations in the formal litigation," <u>id.</u>, and will be insufficient if the "administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in [the employee's] formal suit," <u>id.</u> at 506.

Smith v. First Union National Bank, 202 F.3d 234 (4th Cir. 2000), is cited in <u>Chacko</u> as directly supporting the proposition that the connection between an employee's employment discrimination claim and her EEOC charge will be sufficient when the factual allegations in each are reasonably related. <u>See</u> <u>id.</u> at 509. In <u>Smith</u>, employee Smith's EEOC charge alleged that her supervisor Scoggins sexually harassed her and her employer First Union retaliated against her by chastising her and threatening to

---

Title VII as in employment discrimination claims under the ADA, the exhaustion principles that apply to claims under Title VII apply to claims under the ADA. <u>See</u> 42 U.S.C. §§ 12117(a), 12203(c) (2005).

terminate her employment because she consulted with counsel.  See
202 F.3d at 241, 248.  Smith's employment discrimination complaint
alleged sexual harassment by Scoggins and retaliation by First
Union by forcing her to work on Scoggin's floor and by not offering
her other positions with First Union.  See id.  Although Smith's
complaint and her EEOC charge alleged different retaliatory actions
by First Union, the Fourth Circuit held that Smith could maintain
a retaliation claim against First Union based on the retaliatory
actions alleged in her complaint, because those allegations were
reasonably related to her EEOC charge.  Id. at 248.  The Fourth
Circuit explained that the relationship was sufficient because
"[b]oth Smith's Complaint and her EEOC charge allege retaliatory
actions by First Union's management because of her complaints about
Scoggins."  Id.

     McIntyre-Handy's amended EEOC charge alleges retaliatory
actions in the form of harassment, discipline on August 9, 2004
(for actions that occurred between July 30, 2004, and August 6,
2004), discipline on September 21, 2004, and termination on
September 30, 2004; committed by APAC management (specifically
Lacomte and Brinkley); because she filed a disability
discrimination suit against APAC on June 28, 2004.  See Compl. Ex.
3 (November 5, 2004, EEOC Charge).  According to McInytre-Handy's
pleadings, the specific allegations at issue in APAC's motion--APAC
management monitoring McIntyre-Handy excessively, Lacomte telling

17

her that she should quit, APAC management falsely accusing her of
eating at and sitting on her desk, and Lacomte and Brinkley
distracting her during call tests--were retaliatory actions
committed by APAC management, specifically Lacomte and Brinkley,
during the same time frame referenced in her EEOC charge, July 30,
2004, to September 30, 2004, because she filed suit against APAC on
June 28, 2004.  See, e.g., id. at 2, ¶ 5 (alleging that she was
"monitored more excessively in harassment" in July, 2004); id. at
3, ¶ 8 (alleging that she was "harassed by Aaron Lacomte and told
she should quit" on July 30, 2004); Pl.'s Sworn Statement at 4, ¶
8 (stating that "in the same August 9, 2004, discipline it was
alleged that I ate at my desk this was untrue and it was alleged
that I sat on the (file cabinet) this was untrue"); id. (stating
that the September 21, 2004, disciplinary action "was in harassment
and retaliation because daily I would be intentionally distracted
while Aaron Lacomet [sic] and Wayland Brinkley stood and talked
over me and too [sic] me while I was on test calls"); Compl. Ex. 3
(November 5, 2004, EEOC Charge).  Moreover, McIntyre-Handy alleges
that the retaliatory actions at issue in APAC's motion were
harassing, which is a form of retaliation alleged in her amended
EEOC charge.  See id.

Reasoning from Chacko and Smith, McIntyre-Handy has exhausted
her administrative remedies with respect to the specific
allegations of retaliation at issue in APAC's motion because both

18

her complaint and her amended EEOC charge allege retaliatory actions, by APAC management, specifically Lacomte and Brinkley, occurring from July 30, 2004, to September 30, 2004, because she filed suit against APAC on June 28, 2004.  See Chacko, 429 F.3d at 506, 509; Smith, 202 F.3d at 248.

## b.   Adverse Employment Actions

Discrimination against an individual because such an individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the ADA is prohibited under the ADA's retaliation provision, 42 U.S.C. § 12203.  In order to establish a prima facie case of retaliation under the ADA, the employee must allege that she suffered an adverse employment action subsequent to making the charge or engaging in other activity protected by the ADA.  Freilich v. Upper Chesapeake Health, Inc., 313 F.3d 205, 216 (4th Cir. 2002).[17]

---

[17] An employee may prove retaliation under the ADA by either offering sufficient direct and indirect evidence of retaliation or proceeding under a burden-shifting method.  Rhoads v. F.D.I.C., 257 F.3d 373, 391 (4th Cir. 2001).  Under the burden-shifting method, the employee bears the initial burden of establishing a prima facie case by showing that (1) she engaged in an activity protected by the ADA; (2) she suffered an adverse action subsequent to engaging in the protected activity; and (3) there was a causal connection between the protected activity and the adverse action.  Freilich, 313 F.3d at 216.  If the employee meets her initial burden, the burden shifts to her employer to articulate a legitimate, non-retaliatory reason for its actions.  Rhoads, 257 F.3d at 392.  If the employer meets its burden, the employee must then demonstrate that the employer's proffered reason is pretext for retaliation.  Id.  Employees may rely on the same burden-shifting method to prove retaliation under Title VII, see Ennis v. Nat'l Ass'n Bus. & Educ. Radio, Inc., 53 F.3d 55, 58 (4th Cir. 1995), and the same elements

"Adverse employment action includes any retaliatory act or harassment if, but only if, that act or harassment results in an adverse effect on the 'terms, conditions, or benefits' of employment." Von Gunten v. Maryland, 243 F.3d 858, 866 (4th Cir. 2001). A retaliatory act will result in an adverse effect on the terms, conditions, or benefits of employment if it results in a "decrease in compensation, job title, level of responsibility, or opportunity for promotion." Boone v. Goldin, 178 F.3d 253, 256-57 (4th Cir. 1999); see also James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 376 (4th Cir. 2004) (quoting Boone, 178 F.3d at 256-57). Termination is an adverse employment action, Von Gunten, 243 F.3d

---

must be alleged to establish a prima facie case of retaliation under Title VII, cf. Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 650 (4th Cir. 2002). It is, therefore, appropriate to rely on Title VII precedent in analyzing McIntyre-Handy's ADA retaliation claim. See Fox v. Gen. Motors Corp., 247 F.3d 169, 176 (4th Cir. 2001) (stating that "courts have routinely used Title VII precedent in ADA cases").

McIntyre-Handy proceeds to prove retaliation under the burden-shifting method. APAC contends, in its motion, that McIntyre-Handy fails to meet her initial burden with respect to her retaliation claims based on the specific allegations at issue because she has not shown that those specific allegations constitute adverse employment actions. Mem. Supp. Def.'s Mot. at 8-10. Of course, specific retaliatory actions that are harassing but not, in and of themselves, adverse employment actions may, when combined with other harassing actions, create a hostile work environment. See Von Gunten v. Maryland, 243 F.3d 858, 869-70 (4th Cir. 2001). Retaliatory harassment that creates a hostile work environment can constitute adverse employment action. See id. Since APAC has not requested summary judgment on a retaliatory harassment claim and McIntyre-Handy has not been given full opportunity to present evidence on a retaliatory harassment claim, the court evaluates the specific actions at issue only to determine whether the actions, in and of themselves, constitute adverse employment actions.

at 865, and disciplinary action may be an adverse employment action
when used as a basis for an employee's termination, <u>cf.</u> <u>Thompson</u>,
312 F.3d at 652.  On the other hand, adverse effects will generally
not be attributed in relation to an employer's application of basic
employment policies and disciplinary procedures, particularly when
any negative effects were the result of the employee's own conduct.
<u>Von Gunten</u>, 243 F.3d at 869 (holding that scrutinizing the
employee's requests for leave, following her around and questioning
her activities, and responding to a citizen's complaint against her
by placing her on administrative leave were not adverse employment
actions).  Moreover, an employee's speculation or stark assertions
about the effect of an action on the terms, conditions, or benefits
of employment is not sufficient to survive summary judgment.
<u>James</u>, 368 F.3d at 377 (holding that employee's poor performance
evaluation is not an adverse employment action because employee's
"claim that this evaluation took him off track for promotion and
formed a basis for denying him opportunities is again
conjectural").

McIntyre-Handy essentially argues that the specific
allegations at issue in APAC's motion constitute adverse employment
actions because they led to the infractions for which she was
disciplined on August 9, 2004, and September 21, 2004, and the
disciplinary actions led to her termination.  <u>See</u> Pl.'s Sworn

Statement at 4-5, ¶¶ 8-9; Pl.'s Resp. Def.'s Mot. at 2.[18]  McIntyre-
Handy was disciplined for numerous infractions on August 9, 2004,
and September 21, 2004.[19]   Pertinent to this motion, she was
disciplined on August 9, 2004, for leaving forty-five minutes early
on July 30, 2004, and for sitting on and eating at her desk; and
she was disciplined on September 21, 2004, for failing three out of
five call tests the week of August 14, 2004.   See Pl.'s Resp.
Def.'s Mot. Ex. 2 (August 9, 2004, Corrective Action Form); Def.'s
Reply Pl.'s Resp. Ex. 1 (September 21, 2004, Corrective Action
Form).

   Even assuming that the August 9, 2004, and September 21, 2004,
disciplinary actions were adverse employment actions, as McInytre-

_____

[18] The corrective action forms documenting both the August 9,
2004, and September 21, 2004 disciplinary actions explicitly
provide that further infractions could lead to termination.   See
Pl.'s Resp. Def.'s Mot. Ex. 2 (August 9, 2004, Corrective Action
Form); Def.'s Reply Pl.'s Resp. Ex. 1 (September 21, 2004,
Corrective Action Form).

[19] Specifically, the infractions for which McIntyre-Handy was
disciplined on August 9, 2004, were as follows: (1) she left forty-
five minutes early on July 30, 2004; (2) she came in forty-seven
minutes late on August 3, 2004; (3) she did not work her assigned
shift on August 4, 2004; (4) she was twelve minutes late on August
6, 2004, and (5) she has been sitting on and eating at her desk.
See Pl.'s Resp. Def.'s Mot. Ex. 2 (August 9, 2004, Corrective
Action Form).  The specific infractions for which McIntyre-Handy
was disciplined on September 21, 2004, were as follows: (1) she
accrued fourteen and a half days of un-excused absences from August
16, 2004, to September 17, 2004; (2) she failed three out of five
call tests the week of August 14, 2004; and (3) she was
disrespectful to Human Resources representatives on August 23,
2004, and on September 9, 2004.  See Def.'s Reply Pl.'s Resp. Ex.
1 (September 21, 2004, Corrective Action Form).

Handy claims, McIntyre-Handy has presented insufficient evidence of a causal connection between the specific allegations at issue in APAC's motion--APAC management monitoring McIntyre-Handy excessively, Lacomte telling her that she should quit on July 30, 2004, and Lacomte and Brinkley distracting her during call tests-- and the infractions for which she was disciplined in the corrective actions forms on August 9, 2004, and September 21, 2004. Importantly, McInytre-Handy does not dispute that she actually committed the infractions for which she was disciplined on August 9, 2004, and September 21, 2004, with the exception of sitting on and eating at her desk.  She was, thus, disciplined on August 9, 2004, because she, in fact, left early on July 30, 2004.  See Pl.'s Resp. Def.'s Mot. Ex. 2 (August 9, 2004, Corrective Action Form). Although she may have left early on July 30, 2004, because she was upset that Lacomte had told her that she should quit on that day, she does not allege that Lacomte told her to leave early on that day.  See Compl. at 3, ¶ 8; Pl.'s Sworn Statement at 4, ¶ 8.  It is certainly reasonable for an employer to monitor its employees' attendance and conduct at work.  Thus, McIntyre-Handy's own choice to leave early on July 30, 2004, not Lacomte's comment or APAC management's excessive monitoring, led to her attendance infraction, which led to her discipline for this action on August 9, 2004.  Her undisputed conduct, in fact, led to infractions for which she was disciplined on August 9, 2004, except for sitting on

and eating at her desk.[20]

McIntyre-Handy was also disciplined on September 21, 2004, because she did, in fact, fail three call tests. <u>See</u> Def.'s Reply Pl.'s Resp. Ex. 1 (September 21, 2004, Corrective Action Form). While Lacomte and Brinkley may have distracted McIntyre-Handy while the call tests were being conducted, McIntyre-Handy's own evidence shows that APAC employees' calls were routinely tested, <u>see</u> Derkowski Aff. ¶¶ 1-4, APAC management typically talked to employees to coach them during these tests, <u>see</u> <u>id.</u> at ¶¶ 1-2, and

---

[20] As previously noted, if the employee meets her initial burden of establishing a prima facie case of retaliation, the burden shifts back to her employer to articulate a legitimate, non-retaliatory reason for its actions. <u>See</u> <u>supra</u> note 17. APAC has not requested summary judgment on McIntyre-Handy's retaliation claims based on her disciplinary actions and termination. However, if McIntyre-Handy establishes a prima facie case of retaliation based on the disciplinary actions and termination, her commission of the infractions for which she was disciplined may well be a legitimate, non-retaliatory reason for APAC's actions. Upon offering her commission of the infractions as a reason for disciplining her, the burden would shift back to McIntyre-Handy to demonstrate that the reason is a pretext for retaliation. <u>See</u> <u>id.</u>; <u>Jimenez v. Mary Washington Coll.</u>, 57 F.3d 369, 377-78 (4th Cir. 1995) (stating that to demonstrate that the employer's reason was pretext for retaliation, the employee must show that the employer's reason was false and that retaliation was the real reason). Moreover, since both corrective action forms documenting the August 9, 2004, and September 21, 2004, disciplinary actions expressly warn McIntyre-Handy that further infractions could lead to her termination, <u>see</u> Pl.'s Resp. Def.'s Mot. Ex. 2 (August 9, 2004, Corrective Action Form); Def.'s Reply Pl.'s Resp. Ex. 1 (September 21, 2004, Corrective Action Form), the disciplinary actions are potentially legitimate, non-retaliatory reasons for terminating McIntyre-Handy. Upon APAC's offering McIntyre-Handy's disciplinary actions as a reason for terminating her, McIntyre-Handy would bear the difficult burden of proving that APAC did not terminate her because she was disciplined, but because of retaliation. <u>See</u> <u>Jimenez</u>, 57 F.3d at 377-78.

McInytre-Handy has offered no evidence eliminating the obvious possibility that she failed the tests for reasons unrelated to the actions of Lacomte and Brinkley. Finally, McIntyre-Handy denies that she sat on and ate at her desk, Compl. at 2-3, ¶ 5, Pl.'s Sworn Statement at 4, ¶ 8; therefore, monitoring of her desk activities had no effect on her being disciplined for these actions she claims she never committed.

The asserted causal connection between the actions of APAC management and the infractions is too conjectural, see James, 368 F.3d at 377, and is belied by McIntyre-Handy's own independent actions, see Von Gunten, 243 F.3d at 869. Since McIntyre-Handy has failed to show that APAC management monitoring her excessively; Lacomte telling her that she should quit; and Lacomte and Brinkley standing over her talking to distract her from her work resulted in the August 9, 2004, and September 21, 2004, disciplinary actions, or otherwise affected the terms, conditions, or benefits of her employment, APAC's motion for summary judgment on these specific allegations is **GRANTED**.[21]

## 2.   Disparate Treatment

Interpreting McIntyre-Handy's allegations that "other employees were not held to the same standard," Compl. at 3, ¶ 5, and "[e]mployees Melinda Smith, Major Byrd, Aimee Ervine were not

---

[21] Whether McIntyre-Handy was sitting on or eating at her desk and to what extent any admonishment for such was an adverse employment action remains an issue.

held to the same attendance policy as plaintiff . . . ," id. at 3, ¶ 7, as claims of disparate treatment, APAC requests summary judgment on McIntyre-Handy's disparate treatment claims, arguing that she has failed to exhaust her administrative remedies with respect to these claims because she did not allege disparate treatment in her amended EEOC charge. Mem. Supp. Def.'s Mot. at 5-6. McIntyre-Handy responds that "there is no foundation laid in the EEOC charge or my Complaint or Pleadings that would draw reference to a disparate treatment claim. Any reference to how "others or standards or policy" is only listed as to describe "work practice" and these individuals' knowledge. It is in no way to give rise to a Disparate Treatment theory." Pl.'s Resp. Def.'s Mot. at 1.

As discussed in connection with McIntyre-Handy's retaliation claims, see supra Part III.B.1, a claim may be maintained in an employee's employment discrimination suit only if there is a sufficient connection between the claim and the employee's EEOC charge. See Chacko, 429 F.3d at 509. The connection will be insufficient if the "administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in [the employee's] formal suit." Id. at 506.

McIntyre-Handy, herself, asserts that there is no foundation in her EEOC charge for a disparate treatment claim, and the court agrees. Advancing a disparate treatment theory is a means of

26

proving discrimination against a disabled individual because of the individual's disability. <u>See</u> 42 U.S.C. § 12112 (providing that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual . . . ."); <u>Raytheon Co. v. Hernandez</u>, 540 U.S. 44, 53 (2003) (stating that disparate-treatment claims are cognizable under the ADA). To recover under this theory, the employee must show that she suffers from a disability as defined by the ADA, and her employer took an adverse action against her because of her protected disability. <u>See</u> <u>Carroll v. Xerox Corp.</u>, 294 F.3d 231, 237 (1st Cir. 2002); <u>see also</u> <u>Mack v. Great Dane Trailers</u>, 308 F.3d 776, 782 (7th Cir. 2002) (stating that evidence that a similarly situated disabled individual is treated differently than a less- or non- disabled individual may raise an inference that the adverse action was taken because of the individual's disability). On the other hand, retaliation is discrimination against an individual not because of the individual's disability, but because the individual engaged in an activity protected by the ADA. <u>See</u> <u>supra</u> at 19 & note 17.

McIntyre-Handy's EEOC charge alleges that APAC retaliated against her by harassing, disciplining, and terminating her because she filed a disability discrimination suit against APAC on June 28, 2004. <u>See</u> Compl. Ex. 3 (November 5, 2004, EEOC Charge). Her charge does not allege that she is currently disabled, or that

27

adverse actions were taken against her because of a disability, nor does she mention treatment of other employees in her charge.  <u>See id.</u>  Disparate treatment is simply a different type of discriminatory conduct than the conduct alleged in McIntyre-Handy's EEOC charge.  <u>See</u> <u>Chacko</u>, 429 F.3d at 506.  Thus, to the extent that McIntyre-Handy's complaint alleges disparate treatment claims, summary judgment is **GRANTED** on those claims because she has failed to exhaust her administrative remedies with respect to those claims.

### 3.   First Amendment

McIntyre-Handy argues that the discipline she received on September 21, 2004, for stating that "she was sick of APAC discriminating against her" abridged her First Amendment freedom of speech, and the denial of leave time to prepare for her lawsuit against APAC infringed her First Amendment right to petition the government for a redress of grievances.  <u>See</u> Compl. at 2, ¶¶ 3-4; Pl.'s Sworn Statement at 5, ¶ 9.  APAC requests summary judgment on McIntyre-Handy's claims of First Amendment violations, arguing that the First Amendment does not protect McIntyre-Handy against abridgement of her freedom of expression by APAC, because APAC is not a governmental actor.  Mem. Supp. Def.'s Mot. at 10.  In response, McInytre-Handy asserts that "[t]here is no law that prohibits 'Corporations' from being held to the Constitutionality.  APAC defense is full of 'miscarriages' and its defense is arrogant

that 'Corporations' can just violate our hopes of 'Free Expression' when WE the people have been violated . . . ."   Pl.'s Sworn Statement at 3.

The law, quite simply, is not as McIntyre-Handy wishes it to be.  The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people . . . to petition the Government for a redress of grievances."  Const. amend. I.  By its very terms, the First Amendment guarantees that the government will not abridge the people's freedom of expression.  See Denver Area Educ. Telecomm. Consortium, Inc. v. F.C.C., 518 U.S. 727, 737 (1996) (recognizing that "the First Amendment, the terms of which apply to governmental action, ordinarily does not itself throw into constitutional doubt the decisions of private citizens to permit, or restrict, speech"); see also McDonald v. Smith, 472 U.S. 479, 482 (1985) (stating that "[t]he right to petition is cut from the same cloth as the other guarantees of that Amendment, and is an assurance of a particular freedom of expression").  The Constitution does not protect or provide redress against a private corporation which abridges the free expression of others.  Hudgens v. N.L.R.B., 424 U.S. 507, 513 (1976) (holding that the constitutional guarantee of free expression does not protect the right of union employees to picket a retail store in a privately owned shopping center).

McIntyre-Handy does not allege, nor does the evidence show,

that APAC is a governmental actor.  <u>See</u> Mem. Supp. Def.'s Mot. Ex.
4 (APAC's Financial Disclosure Statement).  Since McIntyre-Handy
has alleged no facts by which the court could find that the First
Amendment protects her against actions by APAC, summary judgment on
McIntyre-Handy's First Amendment claims against APAC must be
**GRANTED**.

### 4.   Intentional Infliction of Emotional Distress

McIntyre-Handy's complaint has been amended to demand $300,000
in damages for intentional infliction of emotional distress.  <u>See</u>
<u>supra</u> at 7-8 and note 12.  To the extent that McIntyre-Handy seeks
to add a substantive intentional infliction of emotional distress
claim, the claim must be **DISMISSED**.[22]

A plaintiff seeking to recover for intentional infliction of
emotional distress under Virginia law must allege that: (1) the
defendant's conduct was intentional or reckless; (2) the conduct
was outrageous and intolerable; (3) the conduct caused plaintiff
emotional distress; and (4) the emotional distress was severe.  <u>See</u>
<u>Harris v. Kreutzer</u>, 624 S.E.2d 24, 33-34 (Va. 2006); <u>Russo v.</u>
<u>White</u>, 400 S.E.2d 160, 162 (Va. 1991).  Malicious or aggravating
conduct will not satisfy the outrageous and intolerable element.

---

[22] This issue was addressed in APAC's response to McIntyre-
Handy's Motions to Amend and to Add UPS as a Party.  <u>See</u> Def.'s
Opp'n Pl.'s Motions at 6-7 (arguing that to the extent that
McIntyre-Handy seeks to add an intentional infliction of emotional
distress claim, that claim is legally insufficient, and thus
subject to dismissal).  McIntyre-Handy chose not to file a reply to
APAC's response.

Russo, 400 S.E.2d at 162.  Rather, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. (internal quotation marks and citations omitted).  The question of whether the defendant's conduct is so outrageous and intolerable as to permit recovery is a question of law for the court.  Hatfill v. N.Y. Times Co., 416 F.3d 320, 336 (4th Cir. 2005) (applying Virginia law).

The allegations in McIntyre-Handy's pleadings and sworn statement, even if true, do not satisfy this stringent standard. See Harris, 624 S.E.2d at 33-34 (holding that plaintiff's allegations that her employer verbally abused her, raised his voice to her, caused her to break down into tears, and accused her of being a faker and malingerer did not satisfy the outrageous and intolerable element); see also Campbell v. Logans Roadhouse, Inc., No. 04-481, 2005 WL 1668052, at *1-2 (E.D. Va. June 21, 2005) (holding that plaintiff's allegations that her supervisor was rude to her, reprimanded and disciplined her unfairly, and reduced her working hours did not satisfy the outrageous and intolerable element); Simmons v. Norfolk & W. R.R. Co., 734 F. Supp. 230, 232 (W.D. Va. 1990) (holding that plaintiff's allegations that his employer "cursed and screamed at [him] in public" and "continually ordered [him] from job to job to the accompaniment of cursing and

31

shouting" did not satisfy the outrageous and intolerable element). Accordingly, McIntyre-Handy's demand for $300,000 in damages for emotional distress only supplements her prayer for relief on claims raised in her original complaint and does not stand as an independent cause of action.

### IV. Conclusion

For the reasons set forth above, McInytre-Handy's Motion to Amend is **GRANTED** as to APAC, and her Motion to Add UPS is **DENIED**. APAC's Partial Motion to Dismiss, or, in the Alternative, for Partial Summary Judgment on McIntyre-Handy's retaliation claim is **GRANTED** as to the specific allegations that APAC management monitored McIntyre-Handy excessively, Lacomte told her that she should quit, and Lacomte and Brinkley distracted her during call tests. APAC's Partial Motion to Dismiss, or, in the Alternative, for Partial Summary Judgment is **GRANTED** on McIntyre-Handy's disparate treatment, First Amendment, and intentional infliction of emotional distress claims. The Clerk is **DIRECTED** to enter judgment in accordance with this Opinion and Order, and to send a copy of this Opinion and Order to McIntyre-Handy and to counsel for APAC.


**IT IS SO ORDERED.**

                                        /s/
                          _____
                              Rebecca Beach Smith

Norfolk, Virginia

March 20, 2006

32